FLAUM, Circuit Judge,
dissenting.
By requiring health insurers to provide contraceptive coverage, the Patient Protection and Affordable Care Act (“ACA”) forces Notre Dame to act in ways it says violate its religious beliefs. The resultant burden on Notre Dame’s rights is substantial: because Notre Dame offers health insurance to its students, and especially because it acts as a self-insurer for its employees, the law turns Notre Dame into a conduit for the provision of cost-free contraception. It also compels Notre Dame to contract with parties — Meritain and Aetna — in a manner in which Notre Dame believes makes it complicit in moral wrong. Notre Dame’s only alternative is to endure crippling fines.
In light of the Supreme Court’s ruling in • Burwell v. Hobby Lobby Stores, Inc., — U.S.-, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014) — the decision the Court cited in asking us to reconsider this case — Notre Dame has articulated a substantial burden for purposes of the Religious Freedom Restoration Act (“RFRA”), 42 U.S.C. § 2000bb et seq. As a result, strict scrutiny governs our consideration of Notre Dame’s challenge here, and the government has the burden of demonstrating that the challenged accommodation is the least restrictive means of serving a compelling interest. In my view, the government has not satisfied that charge. Accordingly, I respectfully dissent, concluding that Notre Dame is entitled to a preliminary injunction pending the district court’s decision of this case on the merits.
The Catholic Church — like all religious employers — is exempt from the ACA’s contraceptive mandate. See Hobby Lobby, 134 S.Ct. at 2763. The U.S. Department of Health & Human Services excluded churches and religious orders from its edict, permitting them to offer employee health insurance that does not include coverage for contraception. Notre Dame seeks that same treatment, because it has the same religious objections to rendering available contraceptive health coverage for those it employs (and those that attend its school, in Notre Dame’s case). At present, Notre Dame — as a nonprofit religious organization that opposes providing contraceptive coverage — may avail itself of what has become commonly referred to as “the accommodation,” see e.g., 45 C.F.R. § 147.131(b), the effects of which Notre Dame says also violate its religious beliefs.
Notre Dame has two distinct roles as far as health insurance is concerned. With respect to its employees, Notre Dame acts as a self-insurer (hiring Meritain as the third-party administrator of its insurance plan). For its students, Notre Dame acts as an insurance broker (negotiating on their behalf to offer them an insurance plan through insurer Aetna). When Notre Dame invoked the accommodation, its relationship with both Meritain and Aetna changed because of the ACA. Meritain, its third-party administrator, became both authorized and required to offer contraceptive coverage to Notre Dame’s employees. See Wheaton Coll. v. Burwell, — U.S. -, 134 S.Ct. 2806, 2814 n. 6, 189 L.Ed.2d 856 (2014) (Sotomayor, J., dissenting) (noting that a religious university’s “third-party administrator bears the legal obligation to provide contraceptive cover *627 age only upon receipt of a valid self-certification” (emphasis added)). Aetna, as the insurer for the student plans, became obli- ' gated to segregate premium payments from Notre Dame’s students and to provide them with contraceptive coverage at Aetna’s expense, separate and apart from the insurance plan offered by the school. See Hobby Lobby, 134 S.Ct. at 2763 (“When a group-health-insurance issuer receives notice that one of its clients has invoked this provision, the issuer must then exclude contraceptive coverage from the employer’s plan and provide separate payments for contraceptive services for plan participants without imposing any cost-sharing requirements on the eligible organization, its insurance plan, or its employees beneficiaries.”) (citing 45 C.F.R. § 147.131(c)).
While Notre Dame is no longer obligated to pay for contraceptive services for its employees, it’s apparent to me that, at a minimum, the ACA thrusts Notre Dame into a facilitator’s role that, Notre Dame says, violates its religious beliefs by forcing it to serve as a continuing link between Meritain and the contraceptive services it provides to Notre Dame’s employees.
With regard to the student health plan, there seems to be outstanding disagreement over whether Notre Dame’s invocation of the accommodation “triggers” Aetna’s obligation to cover student contraception. See Wheaton Coll., 134 S.Ct. at 2807 (majority opinion) (“The Government contends that the applicant’s health insurance issuer ... [is] required by federal law to provide full contraceptive coverage regardless [of] whether the applicant” invokes the accommodation, while Wheaton College “contends, by contrast, that the obligations of its health insurance issuer ... are dependent on their receipt of notice that the applicant objects -to the contraceptive coverage requirement.”). But see 42 U.S.C. § 300gg-13(a) (“A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for — ... (4) with respect to women, such additional preventive care and screenings ... as provided for in comprehensive guidelines supported by the Health Resources and Services Administration .... ”). But that question really is of no moment here, because No-tre Dame also believes that being driven into an ongoing contractual relationship with an insurer — especially one that No-tre Dame chose — that provides its students with contraception compels it to act in contravention of its beliefs.
In Notre Dame’s view, the ACA- alters its relationships with both Meritain and Aetna in a way that renders Notre Dame morally complicit in the provision of contraception. Put simply, Notre Dame is too engaged in a process — the very premise of which offends its religion — that the church itself is exempted from entirely.
The majority appears to minimize the significance of Notre Dame’s position by focusing on its continued objection to the mandate in the face of a proffered accommodation. I believe that any inquiry into the rationality of that position is precluded by the Supreme Court’s decision in Hobby Lobby, which in my view underscores the legitimacy of Notre Dame’s religious objection. There, as here, HHS’s main argument was “basically that the connection between what the objecting parties must do ... and the end that they find to be morally wrong ... [was] simply too attenuated.” 134 S.Ct. at 2777. However, the Supreme Court made clear that this position, at least in this narrow context, is untenable. That’s because it “dodges the question that RFRA presents (whether the *628 HHS mandate imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with their religious beliefs) and instead addresses a very different question that the federal courts have no business addressing (whether the religious belief asserted in a RFRA case is reasonable).” Id. at 2778 (emphasis in original).
Like the plaintiffs’ challenge in Hobby Lobby, Notre Dame’s deeply held religious beliefs about contraception and the formation and prevention of human life “implicate[ ] a difficult and important question of religion and moral philosophy, namely, the circumstances under which it is wrong for a person to perform an act that is innocent in itself but that has the effect of enabling or facilitating the commission of an immoral act by another.” Id. Notre Dame is no doubt differently situated than the Hobby Lobby plaintiffs, who had to directly provide contraceptive insurance. Nevertheless, the ACA also places Notre Dame in a position that contravenes its belief system. Yet the majority here sides with HHS, and “in effect tell[s] the plaintiff[] that [its] beliefs are flawed.” [1] Id. The Hobby Lobby Court, however, rejected that position. See id. (“Repeatedly and in many different contexts, we have warned that courts must not presume to determine ... the plausibility of a religious claim.” (quoting Emp’t Div., Dep’t of Human Res. of Or. v. Smith, 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)))., And so do I.
For that reason, the Hobby Lobby Court had “little trouble concluding” that “the HHS contraceptive mandate ‘substantially burden[ed]’ the exercise of religion” in view of the plaintiffs’ asserted beliefs.[2] Id. at 2775. The Court thus proceeded to the compelling interest component of the RFRA test. See id. at 2779 (“Since the HHS contraceptive mandate imposes a substantial burden on the exercise of religion, we must move on and decide whether HHS has shown that the mandate both ‘(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.’ 42 U.S.C. § 2000bb-l(b).”). In Hobby Lobby, “HHS assert[ed] that the contraceptive mandate serves a variety of important interests, but many of these [were] couched in very broad terms, such as promoting ‘public health’ and ‘gender equality.’” Id. HHS *629 asserted those same interests to the district court in this case. See Defs.’ Resp. in Opp’n to PL’s Mot. for Prelim. Inj. at 15-16, Notre Dame v. Sebelius, 988 F.Supp.2d 912 (N.D.Ind.2013) (No. 3:13-cv-01276) (“[E]ven if the challenged regulations were deemed to impose a substantial burden on plaintiffs religious exercise, the regulations satisfy strict scrutiny because they are narrowly tailored to serve compelling government interests in public health and gender inequality” (emphases added)). The Supreme Court, however, rejected the simple assertion of such broad interests.
“RFRA ... contemplates a ‘more focused’ inquiry: It ‘requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law ‘to the person’— the particular claimant whose sincere exercise of religion is being substantially burdened.’ ” Hobby Lobby, 134 S.Ct. at 2779 (quoting Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 430-31, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)). “This requires us to ‘loo[k] beyond broadly formulated interests’ and to ‘scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants....’” Id. (quoting O Centro, 546 U.S. at 431, 126 S.Ct. 1211). Nevertheless, the Court found it unnecessary to delve into the “features of [the] ACA that support [the] view” that the government lacks a compelling interest here (such as the fact that “many employees— those covered by grandfathered plans and those who work for employers with fewer than 50 employees — may have no contraceptive coverage without cost sharing at all”), because — even assuming that the government’s interest is a compelling one — HHS failed to demonstrate “that the contraceptive mandate is ‘the least restrictive means of furthering’ ” it. Id. at 2780 (citing § 2000bb-1(b)(2)).
As the Court noted, “[t]he least-restrictive-means standard is exceptionally demanding,” and it is the government’s burden to demonstrate that “it lack's other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting partfy].” Id. Here again, the majority in our case sets aside Hobby Lobby, instead assigning Notre Dame this burden because it seeks a preliminary injunction. But Hobby Lobby, too, sought a preliminary injunction. Hobby Lobby Stores Inc. v. Sebelius, 723 F.3d 1114, 1143 (10th Cir.2013) (“[E]ven at the preliminary injunction stage, RFRA requires the government to demonstrate that mandating a plaintiffs compliance with the contraceptive-coverage requirement is ‘the least restrictive means of advancing a compelling interest.’ ” (emphasis in original) (citing O Centro, 546 U.S. at 423, 126 S.Ct. 1211)), aff'd, 134 S.Ct. 2751. And the law in our own circuit is clear on this point. See Korte v. Sebelius, 735 F.3d 654, 673 (7th Cir.2013) (noting, in the preliminary injunction context, that “[o]nce a RFRA claimant makes a prima facie case that the application of a law or regulation substantially burdens his religious practice, the burden shifts to the government to justify the burden under strict scrutiny”). Indeed, the government — in this very case— conceded in its brief to the district court that Korte dictates the issuance of a preliminary injunction if the court finds a substantial burden on Notre Dame’s religious beliefs. See Defs.’ Resp. in Opp’n to Pl.’s Mot. for Prelim. Inj., supra, at 15-16 (“Defendants recognize that a majority of the Seventh Circuit rejected these arguments [that the regulations satisfy strict scrutiny because they are narrowly tailored to serve compelling governmental interests in public health and gender equality] in Korte, and that this Court is bound by that decision.”). In Korte, we granted the preliminary injunction because the *630 government had made minimal efforts “to explain how the contraception mandate is the least restrictive means of furthering its stated goals of promoting public health and gender equality.” 735 F.3d at 687. Korte, of course, was our iteration of Hobby Lobby, and it remains the law of this circuit — yet it appears not to instruct the majority.
The majority observes that Notre Dame has presented “possible alternatives” to the accommodation that would not infringe its religious exercise. Yet it concludes that Notre Dame has failed to present an adequate proposal for how the government can efficiently (and conveniently) .implement and administer an alternative program. But to reiterate, Hobby Lobby expressly informs — consistent with Korte— that it is the government’s, not Notre Dame’s, burden to establish that the accommodation is the least restrictive means of advancing a compelling government interest. Moreover, the suggestion by the majority that any alternative method of advancing the government’s interests would likely be too costly or cumbersome to the government turns a blind eye to the Supreme Court’s latest teachings. What matters under RFRA is whether .the means by which the government is attempting to advance its compelling interest is the least burdensome on Notre Dame’s religious beliefs. Accordingly, RFRA may require the government to start over and “creat[e] ... entirely new programs,” and it “may in some circumstances require the Government to expend additional funds to accommodate citizens’ religious beliefs.” Hobby Lobby, 134 S.Ct. at 2781. For those reasons, the Supreme Court made clear that, in this sphere, “[t]he most straightforward way” of serving the Government’s interests would be for it to assume the cost of providing contraception “to any women who are unable to obtain them under their health-insurance policies due to their employers’ religious objections.” Id. at 2780. Here, as in Hobby Lobby, “HHS has not shown ... that this is not a viable alternative.” Id. For that reason, I would reverse the decision of the district court denying Notre Dame a preliminary injunction.

. To the extent the majority views Notre Dame's burden as less substantial than the burden imposed on the, plaintiffs in Hobby Lobby (and thus not actionable under RFRA) because Notre Dame is further removed from the direct provision of contraception, I suggest that analysis is flawed. Hobby Lobby instructs that, once we determine a religious belief is burdened, substantiality is measured by the severity of the penalties for non-compliance. 134 S.Ct. at 2759, 2775-76. Because the contraceptive mandate forced the Hobby Lobby plaintiffs "to pay an enormous sum of money ... if they insisted] on providing insurance coverage in accordance with their religious beliefs, the mandate clearly impose[d] a- substantial burden on those beliefs.” Id. at 2779. Here, Notre Dame faces the same penalties the Hobby Lobby plaintiffs faced: $100 per day for each affected individual. 42 U.S.C. § 300gg-22(b)(2)(C). "These, sums are surely substantial.” Hobby Lobby, 134 S.Ct. at 2776.

. I would be remiss not to note that just one week after the Supreme Court issued its opinion in Hobby Lobby, Wheaton College— which, on the basis of our first (and now vacated) decision in this case was denied a preliminary injunction in its own Seventh Circuit suit challenging the contraceptive mandate's accommodation provision — sought and was granted emergency relief by the Supreme Court. Wheaton Coll., 134 S.Ct. at 2807. In granting the preliminary injunction, the Court necessarily found (at least for preliminary in-junctive purposes) that the accommodation substantially burdened Wheaton College. No-tre Dame challenges that same (though slightly revised) accommodation.