**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HIGHER TASTE, INC., a Washington Non-Profit Corporation, *Plaintiff-Appellant*, | No. 11-36046 |
| | D.C. No. 3:10-cv-05252-BHS |
| v. | |
| CITY OF TACOMA, a Metropolitan Municipal Corporation; METROPOLITAN PARK DISTRICT OF TACOMA, a Department of the City of Tacoma; EXECUTIVE DIRECTOR JACK C. WILSON, Executive Director of the Metropolitan Park District of the City of Tacoma, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
December 5, 2012—Seattle, Washington

Filed June 3, 2013

Before: Richard C. Tallman and Paul J. Watford, Circuit
Judges, and Sharon L. Gleason, District Judge.[*]

Opinion by Judge Watford

**SUMMARY**[**]

**Civil Rights/Attorney's Fees**

The panel reversed the district court's denial of a motion
for attorney's fees brought pursuant to 42 U.S.C. § 1988(b),
after determining that the district court's preliminary
injunction in plaintiff's favor and the parties' subsequent
settlement agreement conferred prevailing party status on
plaintiff for purposes of an attorney's fee award.

Plaintiff Higher Taste, Inc., brought the underlying suit
under 42 U.S.C. § 1983 seeking to continue to sell
message-bearing T-shirts on public walkways in front of and
leading to the entrance of the Tacoma Zoo. The panel held
that the district court's preliminary injunction ruling, which
was based on a finding that Higher Taste was likely to
succeed on the merits of its First Amendment claim, was
sufficiently on the merits to satisfy the "judicial imprimatur"
requirement for prevailing party status. The panel further
held that the parties' subsequent settlement agreement, which

[*] The Honorable Sharon L. Gleason, United States District Judge for the
District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

allowed Higher Taste to continue selling t-shirts on the public walkway, was sufficiently enduring to satisfy the "material alteration of the parties' legal relationship" requirement.

The panel remanded for the district court to determine in the first instance whether special circumstances existed that would render an attorney's fee award unjust and if such circumstances did not exist, to calculate the reasonable fee that Higher Taste is entitled to recover.

**COUNSEL**

Robert C. Moest (argued), Law Offices of Robert C. Moest, Santa Monica, California; David M. Liberman, Law Offices of David M. Liberman, Los Angeles, California, for Plaintiff-Appellant.

Adam Rosenberg (argued), Keating, Bucklin & McCormack, Inc., P.S., Seattle, Washington, for Defendants-Appellees.

**OPINION**

WATFORD, Circuit Judge:

Plaintiff Higher Taste Inc. is a non-profit religious organization dedicated to promoting non-violence, community harmony, spiritual ecology, and the humane treatment of animals. It seeks to disseminate its message and raise funds by selling T-shirts adorned with messages related to its spiritual mission. For years Higher Taste sold its T-shirts at a public zoo operated by the principal defendant in this case, the Metropolitan Park District of Tacoma, from a

table set up along the main walkway leading from the parking area to the zoo's entrance. This proved to be a prime location, ensuring that a steady stream of the zoo's 500,000–600,000 annual visitors would be exposed to Higher Taste's teachings.

In 2005, the Park District adopted Resolution 40-05, which banned the sale of any merchandise near the zoo's entrance, along the walkways leading to the zoo's entrance, or in the zoo's parking area. At first, the Park District allowed Higher Taste to continue selling its T-shirts at the zoo, albeit not at the prime location Higher Taste had previously occupied. But in March 2010, the Park District, taking an expansive view of its power under the resolution, banned Higher Taste from selling T-shirts anywhere on zoo grounds.

Soon thereafter, Higher Taste sued the Park District under 42 U.S.C. § 1983, requesting a declaration that Resolution 40-05 violated its rights under the First and Fourteenth Amendments and an injunction barring the resolution's enforcement. The district court denied Higher Taste's motion for a temporary restraining order but ordered supplemental briefing on whether it should issue a preliminary injunction. Six weeks later, after receiving briefs and supporting declarations from the parties, the court granted Higher Taste's motion for a preliminary injunction, expressly ruling that Higher Taste had demonstrated a likelihood of success on the merits. The court enjoined enforcement of Resolution 40-05 pending final resolution of the case, which, in the interim, allowed Higher Taste to resume selling its message-bearing T-shirts along the main walkway leading from the parking area to the zoo's entrance.

The Park District did not seek interlocutory review under 28 U.S.C. § 1292(a)(1), so the preliminary injunction remained in effect while the litigation proceeded. Early on, the parties agreed to suspend discovery while they engaged in settlement discussions. After lengthy negotiations that spanned the next sixteen months, the parties' efforts bore fruit. The Park District agreed to enact new regulations allowing organizations like Higher Taste to sell message-bearing merchandise along the main walkway leading from the parking area to the zoo's entrance, among other locations.

The parties executed a written settlement agreement signed by Higher Taste, the Park District, and the other defendants named in the action. As consideration for the dismissal of Higher Taste's lawsuit, the Park District agreed to "allow Higher Taste to sell its message-bearing merchandise (T-shirts) on the walkways . . . between the Zoo and the parking lot, or in the parking lot areas of the Zoo," pursuant to the new regulations, which were attached to the settlement agreement as an exhibit. The parties could not reach agreement on attorney's fees; that issue was left for the district court to resolve by separate motion.

In accordance with the parties' stipulation, the district court entered an order dismissing Higher Taste's action with prejudice. The order did not incorporate the terms of the parties' settlement agreement nor provide for the court's retention of jurisdiction, other than over the issue of attorney's fees.

Higher Taste then moved for attorney's fees under 42 U.S.C. § 1988(b), which permits an award to the "prevailing party" in certain civil rights actions, including those brought under 42 U.S.C. § 1983. The district court

denied Higher Taste's motion on the ground that neither the preliminary injunction nor the subsequent settlement rendered Higher Taste a prevailing party within the meaning of § 1988. We review that ruling de novo because it turns on an issue of statutory construction—the meaning of "prevailing party." *Carbonell v. INS*, 429 F.3d 894, 897–98 (9th Cir. 2005).

A plaintiff "prevails" for purposes of § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). Relief "on the merits" occurs when the material alteration of the parties' legal relationship is accompanied by "judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). Judicial imprimatur can come in the form of an enforceable judgment on the merits or a court-ordered consent decree (the two examples the Court gave in *Buckhannon*), but those are not the exclusive means of satisfying the requirement. *Carbonell*, 429 F.3d at 898; *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002). Other court-approved actions will suffice, provided they entail a judicial determination that the claims on which the plaintiff obtains relief are potentially meritorious. *See Buckhannon*, 532 U.S. at 606.

Lower courts have struggled to decide whether the requirements for prevailing-party status are met by a plaintiff who wins a preliminary injunction but does not litigate the case to final judgment. The difficulty arises because preliminary injunctive relief is sometimes issued after a hearing that is "necessarily hasty and abbreviated," before any real assessment of the merits of the plaintiff's claims can

be made. *Sole v. Wyner*, 551 U.S. 74, 84 (2007). And such relief is, by its very nature, intended to be temporary. Thus, two recurrent questions arise when making prevailing-party determinations in this context: First, is the court's preliminary injunction ruling sufficiently "on the merits" to satisfy *Buckhannon*'s "judicial imprimatur" requirement? And second, has the plaintiff obtained relief sufficiently enduring to satisfy the "material alteration of the parties' legal relationship" requirement?

We begin with the first question, to which the answer, at least on the facts of this case, is clear. Several circuits, including ours, have held that a preliminary injunction satisfies the judicial imprimatur requirement if it is based on a finding that the plaintiff has shown a likelihood of success on the merits. When confronted with those circumstances in *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir. 2002), we held that "[a] preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*." *Id.* at 1096; *accord Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355–56 (11th Cir. 2009); *Dearmore v. City of Garland*, 519 F.3d 517, 523–24 (5th Cir. 2008).[1]

---

[1] We will put to one side so-called "stay put" or "status quo" injunctions, which do not entail a judicial determination regarding the plaintiff's likelihood of success. Some circuits have held that these injunctions cannot satisfy *Buckhannon*'s judicial imprimatur requirement. *See* 2 MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, SECTION 1983 LITIGATION: STATUTORY ATTORNEY'S FEES § 2.04, at 2-33 to 2-46.1 (4th ed. 2003 & Supp. 2012-2) (collecting cases). Because the district court did not issue a "stay put" or "status quo" injunction here, we need not decide whether such injunctions should be treated differently from merits-based preliminary injunctions.

The district court in this case expressly based its preliminary-injunction ruling on a finding that Higher Taste was likely to succeed on the merits of its First Amendment claim, after a hearing that was not "hasty and abbreviated." *Sole*, 551 U.S. at 84. The court's likelihood-of-success finding ensures that the preliminary relief Higher Taste obtained was the product of more than merely a "nonfrivolous but nonetheless potentially meritless lawsuit." *Buckhannon*, 532 U.S. at 606. Thus, as was true in *Watson*, the preliminary injunction satisfies *Buckhannon*'s judicial imprimatur requirement. 300 F.3d at 1096.

We turn now to the second question, which involves determining whether the relief obtained materially altered the parties' legal relationship. No one disputes that, at least for the time it remains in effect, a preliminary injunction normally satisfies this requirement. A material alteration of the parties' legal relationship occurs when "the plaintiff can force the defendant to do something he otherwise would not have to do." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000). That is typically the whole point of an injunction, which is why in the usual case injunctive relief "work[s] the requisite material alteration in the parties' relationship." *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (per curiam).

This is the usual case. Armed with the preliminary injunction, Higher Taste forced the Park District to do something it would not otherwise have had to do—namely, allow Higher Taste to resume selling its message-bearing T-shirts on zoo grounds. But that does not end the inquiry, for the preliminary injunction issued here was intended (as in most cases) to afford only temporary relief pending final resolution of the case.

Precisely because the relief afforded by a preliminary injunction may be undone at the conclusion of the case, some inquiry into events post-dating the injunction's issuance will generally be necessary.  For example, a plaintiff who succeeds at the preliminary injunction stage but loses on the merits after the case is litigated to final judgment is *not* a prevailing party under § 1988; in those circumstances, she secures only an "ephemeral" victory and gains no "enduring" change in the legal relationship of the parties. *Sole*, 551 U.S. at 86.    Still, there may be circumstances in which a preliminary injunction results in sufficiently enduring change to warrant an award of fees, even in the absence of a final judgment on the merits.  The Supreme Court did not resolve that issue in *Sole*, so we must look to circuit-level precedent for guidance.

We have previously held that when a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is a prevailing party eligible for a fee award.  *See Watson*, 300 F.3d at 1096; *Williams v. Alioto*, 625 F.2d 845, 847–48 (9th Cir. 1980) (per curiam); *accord N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006); *Young v. City of Chicago*, 202 F.3d 1000, 1000–01 (7th Cir. 2000) (per curiam); *Haley v. Pataki*, 106 F.3d 478, 483–84 (2d Cir. 1997).  In those cases, although the plaintiff never secured a final judgment granting permanent injunctive relief, the preliminary injunction ended up affording all the relief that proved necessary. *See Watson*, 300 F.3d at 1096; *Williams*, 625 F.2d at 847–48.  The plaintiff therefore received relief that was as enduring as a permanent injunction would have been and, by virtue of the case's mootness, that relief was no longer subject to being "reversed, dissolved, or otherwise

undone by the final decision in the same case."   *Sole*, 551 U.S. at 83; *see also Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 620 (6th Cir. 2007); *Dupuy v. Samuels*, 423 F.3d 714, 719, 723 (7th Cir. 2005).

Other circuits have applied the same reasoning when the plaintiff wins a preliminary injunction and the case is subsequently rendered moot by the defendant's own actions. (A typical scenario:   The plaintiff wins a preliminary injunction prohibiting enforcement of a particular statute, and the defendant renders the case moot by repealing the statute before final judgment is entered.)  In that circumstance, too, courts have held that the plaintiff is a prevailing party under § 1988.  *See, e.g.*, *Common Cause/Ga.*, 554 F.3d at 1356; *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008); *Dearmore*, 519 F.3d at 523–24.  There is again no concern that the relief the plaintiff won at the preliminary-injunction stage will prove to be ephemeral.  The defendant's action in rendering the case moot ensures that the injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation.

The reasoning in these cases persuades us that Higher Taste is a prevailing party here.  It is true that the district court dismissed this case upon the parties' stipulation following settlement, rather than upon a determination of mootness.  But the question is whether Higher Taste achieved relief sufficiently enduring to satisfy the "material alteration of the parties' legal relationship" requirement.  In our view, just as mootness provided assurance in the cases discussed above that the plaintiff's initial victory was enduring rather than ephemeral, so too the settlement provides that assurance here.  It transformed what had been temporary relief capable

of being undone (had the case been litigated to final judgment) into a lasting alteration of the parties' legal relationship. Indeed, by securing Higher Taste's right to continue selling its message-bearing T-shirts along the main walkway leading from the parking area to the zoo's entrance, the settlement agreement gave Higher Taste what it had hoped to obtain through a permanent injunction. *See Williams*, 625 F.2d at 847.

The Park District responds by arguing that, in actuality, the settlement agreement did *not* secure any enduring relief for Higher Taste. The Park District notes that the new regulations it agreed to enact as part of the settlement expressly reserved its right "to change, modify or revoke the above Rules and Regulations if it deems it necessary." Under this provision, the Park District contends, it remains free to unilaterally repeal the regulations in their entirety at any time.

The Park District undoubtedly retains the power to repeal the new regulations it has enacted, and such action would of course affect members of the general public who wish to sell message-bearing merchandise on zoo grounds. But a repeal of the regulations would have no effect on the personal right to sell message-bearing merchandise Higher Taste secured for itself by negotiating the settlement agreement. That contractual right was the consideration Higher Taste received in exchange for dismissing its § 1983 lawsuit with prejudice, a right that would remain enforceable even if the Park District repealed the newly enacted regulations in full. Under the Park District's implausible reading of the settlement agreement, the day after the district court dismissed the action, the Park District could have repealed the new regulations and once again banned Higher Taste from selling its message-bearing T-shirts anywhere on zoo grounds—in

effect putting the parties back to square one. We do not believe the parties spent sixteen months hammering out that illusory "agreement."

Finally, the Park District argues that the settlement agreement cannot confer prevailing-party status on Higher Taste because the district court did not endorse or adopt the settlement agreement or otherwise retain jurisdiction to enforce it. We acknowledge that our case law suggests a settlement agreement must be judicially enforceable to meet *Buckhannon*'s judicial imprimatur requirement. *See St. John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058–59 (9th Cir. 2009). But Higher Taste does not rely on the settlement agreement to satisfy the judicial imprimatur requirement; the preliminary injunction "carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*." *Watson*, 300 F.3d at 1096. Higher Taste instead relies on the settlement agreement to establish that the relief it won at the preliminary-injunction stage is sufficiently enduring to satisfy the "material alteration of the parties' legal relationship" requirement. For the reasons given above, we conclude that the settlement agreement does so.

Because Higher Taste is a prevailing party within the meaning of § 1988, it "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation and internal quotation marks omitted); *see also Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126–30 (9th Cir. 2008). On remand, the district court should determine in the first instance whether such special circumstances exist. If they do not, the court should calculate the reasonable fee Higher Taste is entitled to recover.

**REVERSED AND REMANDED.**