**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEALII MAKEKAU; JOSEPH KENT;
YOSHIMASA SEAN MITSUI; PEDRO
KANAʻE GAPERO; MELISSA
LEINAʻALA MONIZ,
*Plaintiffs-Appellants,*

v.

STATE OF HAWAII; DAVID Y. IGE,
Governor; ROBERT K. LINDSEY, JR.,
Chairperson, Board of Trustees,
Office of Hawaiian Affairs, in his
official capacity; COLETTE Y.
MACHADO; PETER APO; HAUNANI
APOLIONA; ROWENA M.N. AKANA;
JOHN D. WAIHEʻE IV; CARMEN
HULU LINDSEY; DAN AHUNA;
LEINAʻALA AHU ISA, Trustees,
Office of Hawaiian Affairs, in their
official capacities; KAMANAʻOPONO
CRABBE, Chief Executive Officer,
Office of Hawaiian Affairs, in his
official capacity; JOHN D. WAIHEʻE
III, Chairman, Native Hawaiian Roll
Commission, in his official capacity;
NAʻALEHU ANTHONY; LEI KIHOI;
ROBIN DANNER; MAHEALANI
WENDT, Commissioners, Native
Hawaiian Roll Commission, in their

No. 17-16360

D.C. No.
1:15-cv-00322-
JMS-RLP

OPINION

official capacities; CLYDE W.
NAMUʻO, Executive Director, Native
Hawaiian Roll Commission, in his
official capacity; THE AKAMAI
FOUNDATION; THE NAʻI AUPUNI
FOUNDATION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, Chief District Judge, Presiding

Argued and Submitted October 21, 2019
Honolulu, Hawaii

Filed November 26, 2019

Before:  Susan P. Graber, Milan D. Smith, Jr.,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Attorney Fees

Affirming the district court's denial of attorney fees under 42 U.S.C. § 1988, the panel rejected Appellants' assertion that they were the prevailing parties because the Supreme Court had entered, under the All Writs Act, an injunction pending appeal in their civil rights action.

In the underlying action, Appellants challenged a planned election in Hawaii that restricted the pools of delegates and voters to, among other requirements, people who qualified as Native Hawaiians. Appellants sought a preliminary injunction to prevent Appellees from "undertaking certain voter registration activities and from calling or holding racially-exclusive elections for Native Hawaiians." The district court denied the injunction and this Court denied Appellants' motion for an injunction pending appeal. The United States Supreme Court subsequently granted Appellants' application for an injunction pending appeal under the All Writs Act and Appellees cancelled the delegate election and ratification vote. Appellants' pending appeal in this Court was subsequently determined to be moot, and the district court granted Appellants' motion to voluntarily dismiss their complaint without prejudice. Appellants then sought attorney fees under 42 U.S.C. § 1988, arguing that they were the "prevailing party" because they obtained an injunction from the Supreme Court that caused Appellees to cancel the challenged election and referendum.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that a plaintiff who obtains a preliminary injunction under the All Writs Act, 28 U.S.C. § 1651(a), does not qualify as a "prevailing party" for fee-shifting purposes by virtue of that injunction, where the order granting injunctive relief makes no mention of the merits of the plaintiff's claims. The panel concluded that in this case there was simply no indication that the Supreme Court's injunction order addressed the merits. Moreover, the panel noted that Appellants sought (and received) a voluntary dismissal without prejudice in the district court—the opposite of an adjudication on the merits. The panel concluded that Appellants were not the prevailing parties.

Concurring in the result, Judge M. Smith wrote separately to express his view that the key legal issues in this case were close to equipoise. Judge Smith stated that were it not for the uncertainty surrounding the standard under which the Supreme Court grants injunctions under the All Writs Act, he would hold that Appellants were the prevailing parties and entitled to attorney fees.

---

## COUNSEL

Robert D. Popper (argued), Paul J. Orfanedes, Lauren M. Burke, and Chris Fedeli, Judicial Watch Inc., Washington, D.C.; Michael A. Lilly, Ning Lilly & Jones, Honolulu, Hawai'i; H. Christopher Coates, Law Offices of H. Christopher Coates, Charleston, South Carolina; for Plaintiffs-Appellants.

Robert T. Nakatsuji (argued) and Donna H. Kalama, Deputy Attorneys General; Russell A. Suzuki, Attorney General;

Department of the Attorney General, Honolulu, Hawaiʻi; for Defendants-Appellees State of Hawaii and David Y. Ige.

Kurt W. Klein (argued), Robert G. Klein, and Jordan K. Inafuku, McCorriston Miller Mukai MacKinnon LLP, Honolulu, Hawaiʻi; Kannon K. Shanmugam and Ellen E. Oberwetter, Williams & Connolly LLP, Washington, D.C.; for Defendants-Appellees Robert K. Lindsey Jr., Colette Y. Machado, Peter Apo, Haunani Apoliona, Rowena M.N. Akana, John D. Waiheʻe IV, Carmen Hulu Lindsey, Dan Ahuna, Leinaʻala Ahu Isa, Kamanaʻopono Crabbe, John D. Waiheʻe III, Naʻalehu Anthony, Lei Kihoi, Robin Danner, Mahealani Wendt, and Clyde W. Namuʻo.

Miyoko T. Pettit-Toledo (argued) and David J. Minkin, McCorriston Miller Mukai MacKinnon LLP, Honolulu, Hawaiʻi, for Defendant-Appellee Naʻi Aupuni Foundation.

William Meheula and Natasha L.N. Baldauf, Honolulu, Hawaiʻi, for Defendant-Appellee The Akamai Foundation.

**OPINION**

GRABER, Circuit Judge:

We must decide whether a plaintiff who obtains a preliminary injunction under the All Writs Act, 28 U.S.C. § 1651(a), qualifies as a "prevailing party" for fee-shifting purposes by virtue of that injunction, where the order granting injunctive relief makes no mention of the merits of the plaintiff's claims. We hold that the answer is "no."

BACKGROUND

In 2011, the Hawaii legislature enacted measures designed "to provide for and to implement the recognition of the Native Hawaiian people by means and methods" that would help Native Hawaiians move toward "self-governance." Haw. Rev. Stat. § 10H-2. Those measures included establishing a commission to maintain and publish "a roll of qualified Native Hawaiians," thereby "facilitat[ing] the process under which qualified Native Hawaiians may independently commence the organization of a convention of qualified Native Hawaiians, established for the purpose of organizing themselves." *Id.* §§ 10H-3(a)(1), 10H-5.

Defendant Na‘i Aupuni, a private nonprofit entity, supported self-governance efforts. *Akina v. Hawaii*, 835 F.3d 1003, 1008 (9th Cir. 2016) (per curiam) ("*Akina I*"). In 2015, Na‘i Aupuni sought and received grant funding from Defendant Office of Hawaiian Affairs ("OHA"), a state agency, to use for three events: a delegate election, a constitutional convention of the elected delegates, and a referendum to ratify any governing documents produced at the convention. *Id.* Na‘i Aupuni scheduled a vote-by-mail delegate election to run during November 2015. *Id.* Na‘i Aupuni restricted the pools of delegates and voters to people who appeared on the commission's roll of qualified Native Hawaiians and who also affirmed "the unrelinquished sovereignty of the Native Hawaiian people."

In August 2015, Plaintiffs—five registered Hawaii voters—sued the State of Hawaii, OHA, other state agencies and officials, Na‘i Aupuni, and another private nonprofit that participated in the election efforts. *Id.* Plaintiffs alleged that Na‘i Aupuni and the other nonprofit entity became state

actors by conducting the elections and that the State's involvement in the self-governance process violated the Fourteenth and Fifteenth Amendments and the Voting Rights Act of 1965 because of the race-based restrictions on eligibility. Plaintiffs moved for a preliminary injunction to prevent Defendants "from undertaking certain voter registration activities and from calling or holding racially-exclusive elections for Native Hawaiians."

The district court denied Plaintiffs' motion in October 2015. Voting for the delegate election began on November 1. On November 19, we denied Plaintiffs' urgent motion for an injunction pending appeal. Four days later, Plaintiffs, relying on the All Writs Act, filed an emergency application for an injunction pending appeal in the Supreme Court. On November 27, Justice Kennedy enjoined ballot-counting in the delegate election.

After Justice Kennedy's order issued, Na'i Aupuni extended the voting deadline to December 21, 2015. Plaintiffs notified the Supreme Court of the extension. On December 2, the Supreme Court granted Plaintiffs' emergency application. In full, the order stated:

> Application for injunction pending appellate review presented to Justice Kennedy and by him referred to the Court granted. Respondents are enjoined from counting ballots cast in, and certifying winners of, the election described in the application, pending final disposition of the appeal by the United States Court of Appeals for the Ninth Circuit.

> Justice Ginsburg, Justice Breyer, Justice Sotomayor, and Justice Kagan would deny the application.

*Akina v. Hawaii*, 136 S. Ct. 581, 581 (2015) (Mem.) ("injunction order").

In mid-December, Na'i Aupuni announced that it had "terminated" the delegate election and would not count the votes, but would continue the self-governance process by inviting all delegates to the constitutional convention planned for February 2016. Plaintiffs filed a motion for civil contempt, arguing that Defendants had violated the Supreme Court's injunction order by certifying all delegates as winners of the election. The Supreme Court summarily denied that motion. *Akina v. Hawaii*, 136 S. Ct. 922 (2016) (Mem.).

The convention took place in February 2016 and produced a proposed constitution. *Akina I*, 835 F.3d at 1009. But Na'i Aupuni decided not to hold a ratification vote. Na'i Aupuni returned OHA's remaining grant funds, which had been allocated to cover the cost of a ratification vote. Na'i Aupuni dissolved as an entity in April 2016.

Several months later, we dismissed as moot Plaintiffs' appeal of the district court's denial of their preliminary injunction. *Id.* at 1011. The district court then granted Plaintiffs' motion to dismiss their complaint voluntarily and without prejudice under Federal Rule of Civil Procedure 41(a)(2). Plaintiffs subsequently sought attorney fees under 42 U.S.C. § 1988, arguing that they were the "prevailing party" because they obtained an injunction from the Supreme Court that caused Defendants to cancel the challenged election and referendum. The district court denied Plaintiffs'

motion, holding that Plaintiffs were not a "prevailing party" within the meaning of the statute.

DISCUSSION

We review de novo a district court's denial of attorney fees where, as here, the denial "turns on an issue of statutory construction—the meaning of 'prevailing party.'" *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013). To qualify as a "prevailing party" under a fee-shifting statute, a plaintiff must obtain "actual relief on the merits" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). Relief "on the merits" requires some form of "judicial *imprimatur* on the change." *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)).

Accordingly, two questions drive the analysis in determining whether a plaintiff "who wins a preliminary injunction but does not litigate the case to final judgment" is a prevailing party: (1) whether the preliminary injunction was "sufficiently 'on the merits' to satisfy *Buckhannon*'s 'judicial imprimatur' requirement"; and (2) whether the plaintiff "obtained relief sufficiently enduring" to cause a material alteration of the parties' legal relationship. *Id.* at 715–16. Because we conclude that the injunction order did not address the merits of Plaintiffs' claims, we answer only the first question.

Under the All Writs Act, a court may issue an injunction only where it is "necessary or appropriate in aid" of the court's jurisdiction, 28 U.S.C. § 1651(a), and "the legal rights

at issue are indisputably clear," *Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012) (Sotomayor, J., in chambers) (internal quotation marks omitted).  Plaintiffs contend that the Supreme Court always must consider the merits when deciding whether to issue an injunction under the All Writs Act, whether the Court grants or denies relief.  Not so.  In several prior cases, the Supreme Court has expressly disavowed any view of the merits when addressing a party's request for an All Writs Act injunction.  *See, e.g.*, *Wheaton College v. Burwell*, 134 S. Ct. 2806, 2807 (2014) (granting relief and stating that "this order should not be construed as an expression of the Court's views on the merits"); *Little Sisters of the Poor Home for the Aged v. Sebelius*, 134 S. Ct. 1022, 1022 (2014) (Mem.) (same); *Hobby Lobby*, 568 U.S. at 1403 (denying relief and stating:  "First, *whatever the ultimate merits* of the applicants' claims, their entitlement to relief is not 'indisputably clear.'" (emphasis added)).

At oral argument, Plaintiffs relied on *Dunn v. McNabb*, 138 S. Ct. 369 (2017) (Mem.), for the proposition that the All Writs Act requires a court to consider the merits before granting relief.  There, the Supreme Court held that the All Writs Act "does not excuse a court from making [certain] findings" before enjoining an inmate's execution, because "[i]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits."  *Id.* at 369 (internal quotation marks omitted).  Read in context, *Dunn* stands only for the unremarkable proposition that the All Writs Act does not erase *separate* legal requirements for a given type of claim.

Inmates seeking a stay of execution always must show "a significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). But that requirement of a merits showing has nothing to do with the All Writs Act; it applies no matter the vehicle for an inmate's claim. *See, e.g.*, *id.* (addressing a 42 U.S.C. § 1983 claim for a stay of execution and stating that the inmate "must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits"); *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983) (stating that, to obtain a stay of execution, a habeas petitioner needed to show both "a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari" and "a significant possibility of reversal of the lower court's decision"). This case does not involve an inmate seeking a stay of execution (or any party seeking a stay of anything), so *Dunn* cannot bear the weight that Plaintiffs ask it to carry.

Moreover, in "appropriate circumstances," a court may direct an order under the All Writs Act "to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977). Plainly, an order directed to a nonparty who engaged in no wrongdoing would stem from considerations separate from the merits of a case.

Thus, contrary to Plaintiffs' view, the mere fact that the injunction order issued under the All Writs Act does not prove that the Supreme Court found Plaintiffs' claims to be even potentially meritorious. There is simply no indication that the injunction order addressed the merits. Aside from the

brevity of the order, the Supreme Court later denied Plaintiffs' contempt motion in a one-sentence order, which strongly suggests that the injunction order was not on the merits. And Plaintiffs sought (and received) a voluntary dismissal without prejudice in the district court—"the opposite" of an adjudication on the merits. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (stating that Rule 41(a), "in discussing the effect of voluntary dismissal by the plaintiff, makes clear that an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice'"). In short, Plaintiffs are not prevailing parties.

**AFFIRMED.**

M. SMITH, Circuit Judge, concurring in the result:

I write separately to express my view that the key legal issues in this case are close to equipoise. I differ from the majority because I find that the "on the merits" analysis only narrowly disfavors Appellants. I would find that the "sufficiently enduring relief" analysis favors Appellants.

I briefly recount the most essential facts. Appellants, five registered Hawaii voters, sued the State of Hawaii, various state officers including the trustees and director of the Office of Hawaiian Affairs (OHA), and the nonprofit entities Na'i Aupuni and the Akamai Foundation, on constitutional and statutory grounds alleging race- and viewpoint-based voting discrimination. The *Akina* lawsuit challenged efforts by Na'i Aupuni—using grant funds awarded by, and a voter roll of "qualified Native Hawaiians" maintained by, OHA—to hold

a delegate election, a convention, and a ratification election for purposes of Native Hawaiian self-governance.

Appellants unsuccessfully sought a preliminary injunction from the district court, and then an injunction pending interlocutory appeal from our court, which denied the injunctions under *Winter v. NRDC*, 555 U.S. 7 (2008),[1] primarily for failure to show likelihood of proving that Na'i Aupuni was a state actor. *Akina v. Hawaii*, 141 F. Supp. 3d 1106, 1125–35 (D. Haw. 2015); *Akina v. Hawaii*, 835 F.3d 1003, 1009 (9th Cir. 2016). As a result, voting in the delegate election began as scheduled.

Plaintiffs then applied to Justice Kennedy for an emergency interlocutory injunction. With a few days of voting remaining, Justice Kennedy enjoined ballot counting and certification of winners pending further order of the Court, offering no explanation for his reasoning. *Id.* Na'i Aupuni publicly announced the injunction and officially extended the voting deadline. On referral, a divided Supreme Court re-entered the same injunction pending resolution of the appeal to our court, again offering no explanation. *Akina v. Hawaii*, 136 S. Ct. 581 (2015) (mem.). Shortly thereafter, Na'i Aupuni cancelled the delegate election with several days of voting remaining, declared that the ballots would not be counted, and invited all of the delegate candidates to a convention. Appellants filed a motion for civil contempt with the Supreme Court, arguing that Na'i Aupuni's invitation was tantamount to certifying all of the candidates as winners. The

---

[1] *Winter* considers (1) the plaintiff's likelihood of prevailing on the merits, (2) whether the plaintiff will suffer irreparable harm, (3) the balance of equities amongst the parties, and (4) the public interest. 555 U.S. at 20–22.

Court summarily denied the motion. *Akina v. Hawaii*, 136 S. Ct. 922 (2016) (mem.). Naʻi Aupuni held the convention and the participants produced a document.

Naʻi Aupuni then initiated efforts to hold a ratification election, again using the disputed voter roll. Appellants submitted briefing to our court citing the upcoming ratification election as evidence that the appeal was not moot. Before we issued any decision, Naʻi Aupuni canceled the ratification election, and thereafter dissolved as an entity. This court dismissed the appeal as moot. *Akina*, 835 F.3d at 1010–11.

Appellants voluntarily dismissed their complaint without prejudice and moved for attorney's fees as the "prevailing party" in a civil rights lawsuit. The district court denied the motion, concluding that the writ Appellants obtained was merely a status quo injunction driven by considerations regarding irreparable harm, and that it was not based on—as required for prevailing party status—the merits of Appellants' claims. This appeal followed.

## I. On the Merits

In certain civil rights actions, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. To determine whether a preliminary injunction without a final judgment entitles a plaintiff to prevailing party status, we ask two questions: "First, is the court's preliminary injunction ruling sufficiently 'on the merits' to satisfy *Buckhannon*'s 'judicial imprimatur' requirement? And second, has the plaintiff obtained relief sufficiently enduring to satisfy the 'material alteration of the parties' legal relationship' requirement?"

*Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)).

I begin with the first question. "Judicial imprimatur" can take the form of "an enforceable judgment on the merits," "a court-ordered consent decree," or "[o]ther court-approved actions . . . , provided they entail a judicial determination that the claims on which the plaintiff obtains relief are *potentially meritorious*." *Id.* at 715 (emphasis added); *see also Jensen v. City of San Jose*, 806 F.2d 899, 900 (9th Cir. 1986) ("[T]he benefit a party achieves must come from success on the merits of a civil rights claim, not from success on procedural or collateral issues.").

The judicial determinations on which Appellants stake their claim for attorney's fees are the injunctions entered by Justice Kennedy and subsequently by the full Supreme Court pursuant to the All Writs Act, 28 U.S.C. § 1651(a). Appellants' claim narrowly fails because there is a reasonable argument that those injunctions did not involve a judicial determination that Appellants' claims were "potentially meritorious." *Higher Taste*, 717 F.3d at 715. Fundamentally, it is unresolved whether such writs require an assessment of the merits.

## A. Writs of Interlocutory Injunction

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

law." 28 U.S.C. § 1651(a).[2]   Relevant to this case is the § 1651(a) writ for an interlocutory injunction.

The first Supreme Court precedent recognizing the power of the federal courts to issue § 1651(a) writs "in the form of compulsory injunctions aimed at private parties" seems to have been *FTC v. Dean Foods Co.*, 384 U.S. 597, 605 & n.3 (1966) (upholding writ enjoining consummation of merger pending final review by FTC).   The Court justified an appellate court's writ in that case based on a threat to the court's jurisdiction, and notably did not discuss the underlying merits or any other factor typically relevant to preliminary injunctions. *See id.* at 605.[3]

By contrast, in *Sampson v. Murray*, 415 U.S. 61 (1974), the Court readily assumed that the four preliminary injunction factors apply to status quo injunctions granted under the All Writs Act, and held that a *heightened* version of those factors should have applied in the context at hand. *See id.* at 83–84 & n.53 (recognizing the law governing available relief in the

---

[2] This authorization survives nearly unchanged from the Judiciary Act of 1789. *See* Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 73, 81–82. For greater historical detail pertaining to the discussion that follows, through note 4, see Samuel I. Ferenc, Note, *Clear Rights and Worthy Claimants: Judicial Intervention in Administrative Action Under the All Writs Act*, 118 Colum. L. Rev. 127, 136–62 (2018).

[3] This omission cannot be explained away as simply pre-dating the Court's 2008 articulation of the four factors in *Winter*.  As early as *Ex Parte Young*, the Court recognized that "no [preliminary] injunction ought to be granted unless in a case reasonably free from doubt," and acknowledged that the injunction at hand was justified by "great and irreparable injury" to the complainants.  209 U.S. 123, 166–67 (1908). *See generally* Thomas R. Lee, *Preliminary Injunctions and the Status Quo*, 58. Wash. & Lee L. Rev. 109 (2001).

federal employment dispute context). However, the Court specifically held that frustration of the court's jurisdiction was not at stake as it was in *Dean Foods*. *Id.* at 78–80. *Murray* did not clarify whether an injunction that *is* justified by jurisdictional threats might *also* need to satisfy the traditional injunction factors, if not the heightened version the Court ultimately applied in that case.[4]

Around the same time as *Murray*, the Justices of the Supreme Court began developing a terse body of case law applying a unique "indisputably clear" standard to § 1651(a) interlocutory injunction applications addressed to individual Justices. *See Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972) (Rehnquist, J., in chambers) ("the applicants' right to relief must be indisputably clear") (citing no authority). Justice Scalia placed this standard in the context of other authority in *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regulatory Commission*, 479 U.S. 1312 (1986) (Scalia, J., in chambers):

> A Circuit Justice's issuance of [a § 1651(a) writ of injunction]—*which, unlike a . . . stay,*

---

[4] Different circuits have supplied different answers to this question at different times. *See, e.g.*, *United States v. BNS Inc.*, 848 F.2d 945, 947 (9th Cir. 1988) (requiring both jurisdictional threat and irreparable harm); *Wagner v. Taylor*, 836 F.2d 566, 571, 575–76 (D.C. Cir. 1987) (requiring both jurisdictional threat and all four preliminary injunction factors); *V.N.A. of Greater Tift County Inc. v. Heckler*, 711 F.2d 1020, 1030 (11th Cir. 1983) (requiring both jurisdictional threat and a *heightened* showing on all four preliminary injunction factors); *Klay v. United Healthgroup*, 376 F.3d 1092, 1100, 1101–02 n.13 (11th Cir. 2004) (asserting that jurisdictionally justified writs require no analysis of the preliminary injunction factors, unless the writ is "in reality" a preliminary injunction), *called into doubt by Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1131 n.20 (11th Cir. 2005).

*does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts*—demands a significantly higher justification than that described in the . . . stay cases cited by the applicant. The Circuit Justice's injunctive power is to be used "sparingly and only in the most critical and exigent circumstances," and only where the legal rights at issue are "indisputably clear." Moreover, the applicant must demonstrate that the injunctive relief is "necessary or appropriate in aid of [the Court's] jurisdictio[n]."

*Id.* at 1313 (emphasis added) (citations omitted) (first quoting *Fishman v. Schaffer,* 429 U.S. 1325, 1326 (1976) (Marshall, J., in chambers), second quoting *Communist Party*, 409 U.S. at 1235, third quoting 28 U.S.C. § 1651(a)).

Though many individual Justice opinions have denied § 1651(a) interlocutory injunctions based on the "indisputably clear" standard,[5] most relevant to the case at hand are the few

---

[5] *See, e.g., Brown v. Gilmore*, 533 U.S. 1301, 1303–04 (2001) (Rehnquist, C.J., in chambers) (denying the writ because it was unclear whether Virginia's "minute of silence" statute had enough of a secular purpose to distinguish it from an Alabama statute previously invalidated as mandating school prayer) (citing *Wallace v. Jaffree*, 472 U.S. 38, 56 (1985)); *Lux v. Rodrigues*, 561 U.S. 1306, 1307 (2010) (Roberts, C.J., in chambers) (denying the writ because it was unclear whether Virginia's residency requirement for a petition signature's witness was distinguishable from Colorado petition circulation restrictions previously invalidated as violating free speech rights) (citing *Meyer v. Grant*, 486 U.S. 414, 422 (1988); *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S.

and far between cases in which a Justice or the Court has actually granted the writ. No such case, as far as I could find, has ever applied the "indisputably clear" standard.

The most recent § 1651(a) interlocutory injunction of which I am aware is the 2015 writ granted to Appellants. *Akina*, 136 S. Ct. at 581. As is precisely at issue here, that order did not articulate the standard under which it was granted, nor did the immediately preceding writ issued by Justice Kennedy.

The same can be said of the two similar writs granted in 2014. In both *Wheaton College v. Burwell*, 134 S. Ct. 2806 (2014) (mem.), and *Little Sisters of the Poor Home for the Aged v. Sebelius*, 571 U.S. 1171 (2014) (mem.), the Court granted a § 1651(a) writ enjoining the federal government from requiring the plaintiff religious nonprofit entities to fill out and send a form to their third party insurers regarding their objections to the Affordable Care Act's contraceptive coverage mandate. 134 S. Ct. at 2807; 571 U.S. at 1171. Neither memorandum order hinted as to the standard the Court had applied in granting the writ. In both cases, the Court expressly directed that the order "not be construed as an expression of the Court's views on the merits." 134 S. Ct. at 2807; 571 U.S. at 1171.

---

182, 186–87 (1999)); *Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012) (Sotomayor, J., in chambers) (denying writ because the Court had not yet decided whether "closely held for-profit corporations and their controlling shareholders" have religious free exercise rights). I disagree with the majority that any of these cases can be interpreted as not considering the merits. *See id.* (disclaiming any determination of the "ultimate merits" while nevertheless considering the merits in order to recognize that the merits were not "indisputably clear").

Although *Little Sisters* was decided unanimously, a three-Justice dissent criticized the *Wheaton College* majority for failing to apply the "indisputably clear" standard. 134 S. Ct. at 2808 (Sotomayor, J., dissenting) (quoting *Turner Broadcasting*, 507 U.S. at 1303).[6] Notably, the dissent cited no precedent in which a single Justice or the full Court had *granted* a writ after applying the "indisputably clear" standard. *See id.* at 2808, 2810–11 & n.3.[7]

Taking the Court at its word, *Wheaton College* and *Little Sisters* demonstrate that the Court has authority to issue § 1651(a) interlocutory injunctions without applying the "indisputably clear" standard (whatever that standard may entail), and indeed without reaching the merits of the underlying legal challenge.[8]

---

[6] The dissent distinguished *Little Sisters* because, "whatever the merits of that unusual order, it did not affect any individual's access to contraceptive coverage." *Id.* at 2814 n.6 (noting that Little Sisters' third party insurer was a "church plan" that also had no obligation to provide contraceptive coverage).

[7] Prior to *Little Sisters*, the most recent case I am aware of in which a single Justice or the Court granted a § 1651(a) interlocutory injunction was *Lucas v. Townsend*, 486 U.S. 1301, 1304 (1988) (Kennedy, J., in chambers). Despite ruling two years after *Ohio Citizens*, Justice Kennedy in *Lucas* applied the test typically applied to a § 1651(a) application for a *stay* pending certiorari, including "a fair prospect that five Justices will conclude that the case was erroneously decided below." *Id.* Given the intervening three decades, it is unlikely that the Court was tacitly applying this stay standard in *Little Sisters*, *Wheaton College*, or *Akina*.

[8] I agree with the majority that *Dunn v. McNabb*, 138 S. Ct. 369 (2017) (mem.) does not prove that the Court or any individual Justice is required to find "a significant possibility of success on the merits" before granting a § 1651(a) interlocutory injunction outside the context of capital punishment stays. *Id.* at 369 (quoting *Hill v. McDonough*, 547 U.S. 573,

## B. Application

The delegate election and related self-governance processes challenged in the *Akina* lawsuit began to unravel only after Justice Kennedy and then the full Court issued writs of injunction. I have no trouble thus concluding that "judicial imprimatur" was present. *Higher Taste*, 717 F.3d at 716. The difficulty in this case comes from the uncertainty regarding whether that "judicial imprimatur" represented a finding that Appellants' civil rights claims were "potentially meritorious." *Id.* at 715 (quoting *Buckhannon*, 532 U.S. at 606).

Because I find little indication that the Supreme Court was applying the *Winter* framework, I do not attempt to reverse engineer the Court's likely assessment of the *Winter* factors (which would have to have been contrary to this court's assessment when we *denied* an interlocutory injunction). Nor will I attempt to evaluate whether the Court's jurisdiction was genuinely at stake, as I am aware of no Supreme Court precedent clearly endorsing a distinction between jurisdictional and merits-based § 1651(a) injunctions.

If Justice Kennedy or the Court had said anything at all about the merits of Appellants' claims, even without making an express finding of "probable success on the merits," I might have some basis on which to state confidently that Justice Kennedy or the Court considered the claims at least "potentially meritorious." *Id.* But, given the Court's clearly expressed authority to avoid the merits entirely in *Wheaton College* and *Little Sisters*, there is too much uncertainty in the

584 (2016)).

*Akina* writs' silence to reach this conclusion.**[9]**     The "indisputably clear" standard does not appear to be a universal requirement, nor do we have any example of the Court granting a writ under the "indisputably clear" standard that would illustrate its meaning.

Accordingly, I concur in the denial of attorney's fees on the grounds that the judicial relief obtained provided no indication that Appellants' claims were potentially meritorious.

## II. Sufficiently Enduring Relief

I turn now to the second question we ask of a would-be prevailing party who has won a preliminary injunction but not litigated the case to final judgment: "[H]as the plaintiff obtained relief sufficiently enduring to satisfy the 'material alteration of the parties' legal relationship' requirement?" *Higher Taste*, 717 F.3d at 716 (quoting *Buckhannon*, 532 U.S. at 605). I would hold that Appellants have obtained relief "sufficiently enduring." *Id.*

"A material alteration of the parties' legal relationship occurs when 'the plaintiff can force the defendant to do something he otherwise would not have to do.' *Id.* (quoting *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir.

---

**[9]** I note, however, that Appellees argued to the Supreme Court in briefing on the writ that the relevant standard was whether it was "indisputably clear" that Appellants would prevail under the *Winter* test, including consideration of the merits. Appellees' convenient reversal on this position is troubling.

2000)).**[10]** If a preliminary injunction creating such material alteration is rendered moot by the defendant's own actions, prevailing party status is not disturbed. *See id.* at 717–18. "The defendant's action in rendering the case moot ensures that the injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation." *Id.* A plaintiff's "relief sufficiently enduring" need not encompass all of the demands made in their complaint. "[P]laintiffs may be considered 'prevailing parties' . . . if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing the suit." *Jensen*, 806 F.2d at 900 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Plaintiffs ultimately did get much of what they sought in the *Akina* lawsuit: the delegate election and the ratification election were both cancelled; no election based on the disputed voter roll was ever counted or certified; and no DOI-qualifying self-governance document was produced through processes dependent on the disputed voter roll. However, most of these victories went beyond any judicial ruling, and therefore must be excluded from consideration as an impermissible application of the "catalyst theory." *Buckhannon*, 532 U.S. at 609.

---

**[10]** Other circuits have held that a preliminary injunction granting temporary relief that merely maintains the status quo pending final resolution of the merits does not confer prevailing party status. *See N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006) (collecting cases). We have left the question open. *Higher Taste*, 717 F.3d at 716 n.1. I see no need to disturb that silence here, where the Supreme Court had to foresee that its writ would affect the behavior of voters in the ongoing election. *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

Appellants' one victory directly tied to a judicial ruling was the enjoining of vote counting and certification of winners in the 2015 delegate election. This was a "significant issue" because a publicized vote count and certification of winners would have effectuated the results of a race- and viewpoint-restricted voting process. *Jensen*, 806 F.2d at 900. By voluntarily then cancelling the delegate election before the end of the voting period, Naʻi Aupuni permanently voided it. This action ensured that the Court's writ would "not be undone by subsequent rulings in the litigation." *Higher Taste*, 717 F.3d at 717–18. It does not matter that Appellees remain able to pursue various other actions Appellants sought to enjoin through their lawsuit (e.g. hold a new election via a new nonprofit using the same disputed voter roll), because "some of the benefit" Plaintiffs sought became permanent. *Jensen*, 806 F.2d at 900.

I disagree with the district court's conclusion that Appellants obtained only "ephemeral" relief. Appellants' lawsuit sought to enjoin the "calling, holding, or certifying of any election" using the disputed voter roll. Appellants successfully enjoined the certifying of one such election.[11] Moreover, our subsequent dismissal of Appellants' appeal as moot depended on the conclusion that "the allegedly wrongful behavior could not reasonably be expected to recur." *Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016).

---

[11] The Supreme Court's denial of Appellants' civil contempt motion should be read to preclude the theory that Appellants failed to prevent certification of the winners of the election. *See Akina*, 136 S. Ct. at 922. If Naʻi Aupuni's invitation of all the delegate candidates to the convention had counted as certifying them as winners, the Court would have granted the contempt motion.

Thus, were it not for the uncertainty surrounding the standard of review applied in the *Akina* writs, I would hold that Appellants are prevailing parties and entitled to attorney's fees.